MICHAEL J. STRUMWASSER (SBN 58413)
BRYCE A. GEE (SBN 222700)
JULIA MICHEL (SBN 331864)
STRUMWASSER & WOOCHER LLP
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (310) 576-1233
Facsimile: (310) 319-0156
mstrumwasser@strumwooch.com
bgee@strumwooch.com
jmichel@strumwooch.com

*Attorneys for Defendants Ricardo Lara and
the California Department of Insurance*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND,<br><br>Plaintiff,<br><br>v.<br><br>RICARDO LARA, in his official capacity as INSURANCE COMMISSIONER OF THE STATE OF CALIFORNIA; and THE CALIFORNIA DEPARTMENT OF INSURANCE, an Agency of the State of California,<br><br>Defendants. | Case No. 2:20-cv-01289-JAM-CKD<br><br>DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) & 12(b)(6)<br><br>Date:  January 26, 2021<br>Time:  1:30 p.m.<br>Courtroom:  6 (Hon. John A. Mendez) |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................3

INTRODUCTION ...........................................................................................6

BACKGROUND .............................................................................................6

LEGAL STANDARDS ......................................................................................8

ARGUMENT .................................................................................................9

I.      The Entire Complaint Must Be Dismissed Because All Its Claims Are Barred by the Eleventh Amendment and State Sovereign Immunity................................................9

        A.      The Eleventh Amendment Bars All Claims Against Defendant California Department of Insurance Because It Is a State Agency ....................................9

        B.      The Eleventh Amendment Bars All Claims Against Defendant Commissioner Because He Is A State Official and the *Ex Parte Young* Exception Does Not Apply..................................................................................................9

II.     Alternatively, the Complaint Should Be Dismissed on Abstention Grounds ..........................13

        A.      *Burford* Abstention Should Be Applied to Avoid Interfering with the State's Administrative Process .................................................................13

        B.      *Colorado River* Abstention Should Be Applied Because this Action Duplicates the Pending State-Court Action ...................................................15

III.    The Complaint's Challenges to the *A-Brite* Decision Must Be Dismissed Because State Fund Failed to Exhaust Its Judicial Remedies ...............................................16

IV.     The Complaint Must Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted ..............................................................................................17

        A.      Claims 1, 2, 3, and 9 Fail as a Matter of Law Based on the Terms of the Settlement Agreement .................................................................18

        B.      Claims 4 and 5 Fail as a Matter of Law Because the Administrative Orders at Issue Do Not Give Rise to a Contract Clause Violation ................................19

        C.      Claims 6 and 7 Fail as a Matter of Law Because the Complaint Admits That State Fund Had Adequate Notice Under the Due Process Clause ................................19

        D.      Claims 4 and 6 Against the California Department of Insurance Fail as a Matter of Law Because CDI is Not a "Person" Under § 1983 ................................20

CONCLUSION ..............................................................................................20

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## Federal Cases

*Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341 (1951) .............................................13, 14, 15

*Barrows v. Jackson*, 346 U.S. 249 (1953) ...........................................................................................19

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)................................................................................13, 14

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ..........................15

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014)............................................................8

*Doe v. Regents of the U. of Cal.*, 891 F.3d 1147 (9th Cir. 2018)..........................................10, 15, 17

*Edelman v. Jordan*, 415 U.S. 651 (1974) ............................................................................................11

*Ex parte Young*, 209 U.S. 123 (1908) ..............................................................................9, 10, 11, 12

*Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290 (9th Cir. 1996) .............................................13

*Green v. Mansour*, 474 U.S. 64 (1985)........................................................................................11, 12

*Hagood v. Southern*, 117 U.S. 52 (1886)............................................................................................10

*In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140 (4th Cir. 1993) ...........................11

*Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116 (9th Cir. 2008) ...........................................9

*Kentucky v. Graham*, 473 U.S. 159 (1985)..........................................................................................10

*Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375 (1994)..............................................................8, 9

*Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160 (9th Cir. 2017) ............................................15, 16

*Murray v. Wilson Distilling Co.*, 213 U.S. 151 (1909) ........................................................................11

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)..................................13

*New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18 (1888) ........................19

*Oneida Cnty. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226 (1985)........................................11

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)............................................9, 10, 11

*Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015)..................................................................................8

*Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237 (1952) ...............................................................12, 15

*Romano v. Bible,* 169 F.3d 1182 (9th Cir. 1999) .................................................................................9

*Sossamon v. Texas*, 563 U.S. 277 (2011)............................................................................................20

*Ulaleo v. Paty*, 902 F.2d 1395 (9th Cir. 1990) .............................................................................11, 12

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011)......................................................9

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)..........................................................12, 20

### State Cases

*Murray v. Alaska Airlines, Inc.*, 50 Cal.4th 860 (2010)...........................................................17

### Federal Constitutions

U. S. Const., amend. XI ............................................................................................................9

U.S. Const., art. I, § 10, cl. 1 ..................................................................................................19

### Federal Statutes

15 U.S.C.,

        § 1011 ..........................................................................................................................13

        § 1012 ..........................................................................................................................13

42 U.S.C.,

        § 1983 .....................................................................................................................12, 20

### Federal Rules

Fed. R. Civ. P.,

        12(b)(1) ..........................................................................................................................8

        12(b)(6) .......................................................................................................................8, 9

### State Constitutions

Cal. Const., art. I, § 9 ............................................................................................................19

Cal. Const., art. V, § 14(f) .......................................................................................................6

### Statutes

Cal. Civ. Proc. Code,

        § 526(b)(5) ..................................................................................................................11

        § 1094.5 ............................................................................................................7, 15, 17

Gov. Code,

        § 11425.60(b) ...............................................................................................................7

Ins. Code,

        § 21 ...............................................................................................................................9

        § 21.5(b) ......................................................................................................................12

        § 11735 .......................................................................................................................14

        § 11737 .......................................................................................................................14

        § 12906 ....................................................................................................................6, 9

**Regulations**

Cal. Code Regs. tit. 10,

§ 2509.42(j) ..................................................................................................................12

§ 2509.53(c) ..................................................................................................................12

§ 2509.58(f) ..................................................................................................................12

§ 2509.69 ......................................................................................................................12

§ 2509.69(a) ..................................................................................................................12

§ 2509.76 ......................................................................................................................15

§ 2509.76(a) ..................................................................................................................17

## INTRODUCTION

Apparently unsatisfied with how its pending state-court action is proceeding, Plaintiff State Compensation Insurance Fund (State Fund), a state agency, has filed this federal-court action against the Insurance Commissioner of the State of California, in his official capacity (Commissioner), and the California Department of Insurance (CDI). Those are the same defendants State Fund is suing in its state-court action, where it is alleging facts nearly identical to those alleged here and is requesting essentially the same relief.

But in seeking out a different forum, State Fund forgot about the Eleventh Amendment. It also forgot about abstention. And the judicial-exhaustion requirement. There is no federal-court jurisdiction over an agency of the state or a state official. None of the limited exceptions to sovereign immunity apply, and even if one did, the pendency of the state-court action involving the same parties, issues, and requested relief would compel the Court to abstain. And State Fund's failure to see its state action through to completion separately requires dismissal for failure to exhaust its judicial remedies. Put simply, there is no legal basis or legitimate reason for this action to proceed.

This is equally true of the substantive allegations, which fail to state a legally cognizable claim for relief. State Fund complains about a breach of a settlement agreement, but cannot point to a single provision of the agreement that was breached, and, in fact, elsewhere admits that Defendants satisfied the only contractual obligation imposed on them. State Fund asserts a violation of the Contract Clause, which prohibits laws that impair contracts, but fails to identify any actual law or any impermissible impairment. State Fund says Defendants violated Due Process by not providing adequate notice of the matters to be decided, but then acknowledges it was repeatedly ordered, but refused, to produce the very evidence in dispute. The Complaint's allegations disprove themselves and fail on their own.

This action should be dismissed in its entirety with prejudice.

## BACKGROUND

Defendant California Department of Insurance "is an agency of the state of California" (Compl. (Docket (Dkt.) 1) ¶ 19), and Defendant California Insurance Commissioner is a "state officer" under the California Constitution, Cal. Const., art. V, § 14(f), who serves as the head of CDI, Cal. Ins. Code § 12906. Together, they are responsible for regulating insurers in California, including

Plaintiff State Fund. (Compl. ¶¶ 4, 18–19.)

This action arises out of two state administrative orders that State Fund alleges are invalid under state and federal laws. The first is a November 16, 2018 final administrative decision issued by the Commissioner in *In the Matter of the Appeal of A-Brite Blind & Drapery Cleaning*, File AHB-WCA-17-26 (*A-Brite* Decision), finding that the insurance rates State Fund had charged the A-Brite company in 2015 and 2016 were illegal (Compl. ¶¶ 46–64), because State Fund had calculated those rates using an algorithm that was not contained in State Fund's public rate filings with the Commissioner for those years (*id.* ¶¶ 63, 78). The Commissioner designated the *A-Brite* Decision as a "precedent decision" pursuant to California Government Code section 11425.60(b). (*Id.* Ex. E at 1.)

Judicial review of the *A-Brite* Decision was available by writ of administrative mandamus under California Civil Procedure Code section 1094.5, but State Fund reached a Settlement Agreement with CDI, under which it agreed to abide by the *A-Brite* Decision and not to seek judicial review of it in exchange for the Commissioner removing the Decision's precedential designation. (*Id.* ¶ 69 & Ex. E at 2 ¶ 2.) In accordance with that Agreement, the Commissioner rescinded the precedential designation (*id.* ¶ 69), and State Fund did not file a section 1094.5 action against the *A-Brite* Decision by the March 15, 2019 deadline (*id.* ¶ 72).

The second administrative order at issue is a May 8, 2019 interlocutory order issued in a separate matter by an Administrative Law Judge (ALJ) in *In the Matter of the Appeal of Sessions Payroll Management, Inc.*, File AHB-WCA-18-47 (*Sessions* Order), which ruled that the judicial-exhaustion and collateral-estoppel doctrines precluded State Fund from relitigating certain factual and legal issues decided in the non-precedential *A-Brite* Decision. (Compl. ¶ 74 & Ex. C.) State Fund does not allege that the *Sessions* administrative proceeding has been completed, that the *Sessions* Order is a final administrative decision, or that Commissioner has taken any action related to the matter.

Unhappy with this interim order, on June 10, 2019, months after the deadline to do so, State Fund filed a writ petition under California Civil Procedure Code section 1094.5 challenging the *A-Brite* Decision in Sacramento Superior Court, Case No. 34-2019-80003164. (Defs' Req. for Judicial Notice (RJN), Ex. 2.) State Fund thereafter filed an amended writ petition. (*Id.* Ex. 3.) The amended petition alleges the same underlying facts, often word for word, as alleged in the Complaint here:

7

- That State Fund properly filed its rate filings with the Commissioner from 2013 through 2016. (*Compare* Compl. ¶¶ 30–45 *with* RJN, Ex. 3 ¶¶ 20–28.)

- That State Fund did not have adequate notice that its rate filings were at issue in the *A-Brite* proceeding. (*Compare* Compl. ¶¶46–64 *with* RJN, Ex. 3 ¶¶ 34–52, 142–43.)

- That State Fund and the Commissioner entered into the Settlement Agreement, and pursuant to that Agreement, State Fund refrained from filing a judicial challenge to the *A-Brite* Decision. *Compare* (Compl. ¶¶ 65–69, 72 *with* RJN, Ex. 3 ¶¶ 53–57, 60.)

- That the Commissioner misled State Fund into believing that the Settlement Agreement barred application of the *A-Brite* Decision to any future hearings for any purpose. (*Compare* Compl. ¶¶ 70–71 *with* RJN, Ex. 3 ¶¶ 58–59.)

- That Defendants breached the Settlement Agreement when the ALJ in the *Sessions* proceeding issued the *Sessions* Order. (*Compare* Compl. ¶¶ 73–80 *with* RJN, Ex. 3 ¶¶ 61–68.)

Based on these allegations, State Fund's state-court action challenges the validity of the *A-Brite* Decision and seeks an order vacating that Decision. (RJN, Ex. 3 at 33 & ¶ 162.)

    Approximately one year after the state-court action was initiated, State Fund filed this action, alleging a variety of claims for relief that are similarly premised on declaring the *A-Brite* Decision "invalid and unenforceable," "bar[ring] Defendants from using the *A-Brite* Decision," and "enjoining Defendants from taking any action to enforce the *A-Brite* Decision." (Compl. at 23.)

    On September 1, 2020, in accordance with the Court's June 26, 2020 Order (Dkt. 3-2), the parties met and conferred regarding Defendants' contemplated motion to dismiss in this federal proceeding. After a stipulated extension (Dkt. 9), Defendants now timely file the motion to dismiss.

## LEGAL STANDARDS

    Rule 12(b)(1) authorizes a court to dismiss an action for lack of subject-matter jurisdiction and is "a proper vehicle for invoking state sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Although the Ninth Circuit has not squarely addressed the question, a motion to dismiss on abstention grounds appears to be reviewable under Rule 12(b)(1) or Rule 12(b)(6). *Courthouse News Serv. v. Planet*, 750 F.3d 776, 779 n.2 (9th Cir. 2014). The party asserting federal subject-matter jurisdiction bears the burden of proving its existence. *Kokkonen v. Guardian*

*Life Ins. Co.,* 511 U.S. 375, 377 (1994).

Under Rule 12(b)(6), a court may dismiss an action based on a complaint's failure to state a claim upon which relief can be granted, testing the legal sufficiency of the claims based on the allegations in the complaint, documents attached to the complaint, documents on which the complaint necessary relies, or matters of judicial notice. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation omitted).

## ARGUMENT

### I. THE ENTIRE COMPLAINT MUST BE DISMISSED BECAUSE ALL ITS CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT AND STATE SOVEREIGN IMMUNITY

With narrow exceptions, Eleventh Amendment sovereign immunity bars suits in federal courts against states, state agencies, and state officials. U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Those exceptions—namely, the authorization of federal actions for prospective injunctive relief against a state officer established in *Ex parte Young*, 209 U.S. 123 (1908)—do not apply here. Each of State Fund's claims for relief is barred by the Eleventh Amendment and should be dismissed for lack of jurisdiction.

### A. The Eleventh Amendment Bars All Claims Against Defendant California Department of Insurance Because It Is a State Agency

"[A] suit in which the State or *one of its agencies or departments* is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 100 (emphasis added); *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) ("The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state."). Defendant California Department of Insurance is an agency of the State of California, Cal. Ins. Code, §§ 21, 12906; indeed, the Complaint affirmatively alleges that CDI is a California state agency (Compl. ¶ 19). As such, all claims against it must be dismissed with prejudice as barred by the Eleventh Amendment.

### B. The Eleventh Amendment Bars All Claims Against Defendant Commissioner Because He Is A State Official and the *Ex Parte Young* Exception Does Not Apply

The Eleventh Amendment likewise bars suits against state officials sued in their official capacity because the action "is in fact a suit against the State." *Pennhurst*, 465 U.S. at 101–02. Such

9

official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are, "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quotations and citations omitted). The Complaint here names both a state agency and a state official, in his official capacity (Compl. at 1–2), and is therefore in fact a suit against the State and barred by the Eleventh Amendment.

The *Ex parte Young* exception to Eleventh Amendment immunity is strictly limited to suits against a state official that "alleg[e] a violation of *federal* law" and that seek "an injunction that governs the official's *future* conduct." *Pennhurst*, 465 U.S. at 102–03 (emphasis added). None of the claims alleged in the Complaint fit within this narrow exception.

### 1.  Claims 1, 2, 3, 5, 7, 8, and 9 Are Barred Because They Do Not Allege Violations of Federal Law

Claims alleging violations of *state* law by a state official plainly do not fall within the *Ex parte Young* exception. *Pennhurst*, 465 U.S. at 106 (stating that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law"). In fact, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.*; *see also Doe v. Regents of the U. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) ("[T]he *Young* exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality as the defendant.").

Contrary to this well-established and straightforward rule, *seven* of nine claims in the Complaint are based on alleged violations of state law by CDI and the Commissioner. Claims 1, 2, 3, and 9 seek various forms of relief based expressly on Defendants' alleged violation of the "Settlement Agreement" between State Fund and CDI. (Compl. ¶¶ 86, 91, 102–03, 126.) That Settlement Agreement is a state contract that provides that it "will be interpreted and construed in accordance with California law." (*Id.* Ex. E at 2 ¶ 6.) Each of those claims therefore arises under state contract law and present substantive state law claims outside of *Ex parte Young*.[1] *Pennhurst*, 465 U.S. at 106.

---

[1] Claims 2 and 9, which seek specific enforcement of, and an injunction to enforce, the Settlement Agreement against Defendants (Compl. ¶¶ 91, 127), are also barred because the Eleventh Amendment prohibits federal actions against a state officer to compel performance of a state contract. *Hagood v. Southern*, 117 U.S. 52, 67–68 (1886). "[I]t is settled that a bill in equity to compel the specific performance of a contract between individuals and a state cannot, against the objection of the state, be maintained in a court of the United States." *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 168

10

Claims 5 and 7 for declaratory relief based on the California Constitution's Contract and Due Process Clauses (Compl. ¶¶ 112–13, 119–20) similarly seek "relief against state officials on the basis of state law" in violation of the Eleventh Amendment. *Pennhurst*, 465 U.S. at 106.

Claim 8 seeks equitable indemnity under state law; no federal ground for this relief is alleged. (Compl. ¶¶ 121–24). Separately, such a request for indemnification is "a claim against the State for retroactive monetary relief" that is "barred by the Eleventh Amendment." *Oneida Cnty. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 251 (1985); *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140 (4th Cir. 1993) (rejecting indemnification against the state in federal court).

In sum, because Claims 1, 2, 3, 5, 7, 8, and 9 do not allege violations of federal law, State Fund cannot establish subject-matter jurisdiction. They should be dismissed with prejudice.

**2.      Claims 4 and 6 Are Barred Because They Do Not Seek Prospective Relief**

*Ex parte Young* allows "prospective injunctive relief to prevent a continuing violation of federal law," but not "retrospective relief." *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Edelman*, 415 U.S. at 677 ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief"). "[I]f the relief sought is *prospective* relief against a state official, i.e. injunctions, the relief is allowable," but claims of "a past breach coupled with plaintiffs' desire to be *restored* to a prior position" are not prospective and are barred by the Eleventh Amendment. *Ulaleo v. Paty*, 902 F.2d 1395, 1398, 1400 (9th Cir. 1990).

Claims 4 and 6 do not seek "prospective injunctive relief," but instead request only declarations about the constitutionality of Defendants' past actions. (Compl. ¶¶ 105–11, 114–18.) The past actions that State Fund appears to be referring to are the Commissioner's issuance of the *A-Brite* Decision and the issuance of the *Sessions* Order by ALJ de Maigret at the Administrative Hearing Bureau (AHB) (*id*. at 23 & ¶ 2), which are two administrative orders that State Fund wants the Court to declare "invalid and unenforceable" (*id*. at 23). These are precisely the types of allegations of "a

---

(1909); *see also Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974). In fact, claim 9 seeks injunctive relief "pursuant to California Civil Procedure Code section 526, subdivision (a)" (Compl. ¶ 126), a state statute that prohibits injunctions "[t]o prevent the breach of a contract the performance of which would not be specifically enforced," Cal. Civ. Proc. Code § 526(b)(5). Thus, as a substantive matter of California law, State Fund would not be entitled to such an injunction in any event.

past breach coupled with plaintiffs' desire to be *restored* to a prior position" that are not authorized under *Ex parte Young*. *Ulaleo*, 902 F.2d at 1400.[2]

These claims further fail because State Fund does not allege that it is Defendant Commissioner who is continuing to violate Plaintiff's federal rights. State Fund alleges "unlimited, retroactive harm" if the reasoning in the *Sessions* Order, which found the *A-Brite* Decision "conclusive on the issue of whether State Fund's rates were filed" (Compl. ¶ 15), were to be applied against it in other proceedings (*id*. ¶ 16). The *Sessions* Order, however, was issued not by Defendant Commissioner, but by ALJ de Maigret[3] (*id*. ¶¶ 74, 80 & Ex. C), who is, by statute, prohibited from being directly supervised by the Commissioner, Cal. Ins. Code, § 21.5(b). Once ALJ de Maigret was appointed as the hearing officer to preside over the *Sessions* proceeding, Cal. Code Regs. tit. 10, §§ 2509.42(j), 2509.53(c), the Commissioner's authority over the matter ceased, *id*. § 2509.58(f), until the entire case is completed and the hearing officer submits a proposed decision on the merits to the Commissioner, *id*. § 2509.69(a). It is only at that point the Commissioner can consider the ALJ's proposed decision— including the *Sessions* Order that State Fund complains of—and determine whether to adopt or reject the proposed decision, in whole or in part. *Id*. § 2509.69. Until then, the Commissioner does not, and cannot, review interlocutory orders such as the *Sessions* Order. State Fund has therefore failed to allege that the Commissioner has taken any action related to that order. If there is any "violation," it is neither "continuing," nor committed by Defendant Commissioner.

---

[2] To put these claims for declaratory relief into further context, State Fund is presently litigating at least three state-court actions (Compl. ¶¶ 8–9 & n.2; RJN, Exs. 1 & 3) that are based on the same underlying facts relating to the *A-Brite* Decision and the *Sessions* Order. Were the Court to declare those administrative orders to be unconstitutional, State Fund could then seek to use the Court's declarations as res judicata in an effort to resolve the pending state actions in State Fund's favor. Such retrospective relief "over the past lawfulness of respondent's action" would result in a federal court having impermissibly "lifted the case out of the state court before the state agency or court can hear it." *Green*, 474 U.S. at 72–73; *see also Pub. Serv. Comm'n v. Wycoff Co*., 344 U.S. 237, 243 (1952) (recognizing that for declaratory relief claims, federal courts "must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions," particularly where, for example, "a ruling is sought that would reach far beyond the particular case").

[3] State Fund's allegations that "CDI violated the law" because ALJ de Maigret and AHB are part of CDI (Compl. ¶¶ 77–78) are irrelevant. The *Ex parte Young* exception does not authorize injunctive relief against state agencies, such as CDI. State agencies are not even "persons" for purposes of 42 U.S.C. § 1983. E.g., *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

## II.   ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED ON ABSTENTION GROUNDS

If the Court determines it has jurisdiction over any of State Fund's claims, those surviving claims would be subject to dismissal on abstention grounds. While abstention is the exception, not the rule, this action, involving the same parties, factual allegations (often word for word), and relief as the state action, would have the effect of removing from the state's exclusive and established administrative process this, and potentially any, administrative determination regarding the complex regulatory issue of insurance rates—precisely the circumstances for which abstention was designed.

### A.   *Burford* Abstention Should Be Applied to Avoid Interfering with the State's Administrative Process

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) established an administrative-abstention doctrine that requires federal courts to abstain from cases interfering with "an administrative order based upon predominantly local factors." *Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 349 (1951). Under this doctrine, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies" if *either* of two situations is present: (1) "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" *or* (2) "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350, 361 (1989).[4]

Both are present here. First, at issue in this action is a state regulator's authority to regulate the business of insurance (Compl. ¶¶ 3–8)—a matter that Congress has expressly declared is, "in the public interest," subject to state, not federal, law, 15 U.S.C. §§ 1011–12. More specifically, this action challenges two state administrative orders addressing the legality of how State Fund calculated

---

[4] The Ninth Circuit has applied a similar formulation, requiring that the state have concentrated suits involving the local issue in a particular court; the federal issues not be easily separated from the complicated state law issues with which state courts may have special competence; and federal review might disrupt state efforts to establish a coherent policy. *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 296 (9th Cir. 1996). No one factor is determinative, and the absence of one does not preclude abstention. *Id.* at 297 (finding "the state's attempts to establish a coherent policy are of little consequence," but the "presence of other *Burford* factors in this matter…strongly weighs in favor of abstention."). As discussed below, this action satisfies all the factors in any event.

insurance rates charged in California. The *A-Brite* Decision held that State Fund's use of a "tier modifier" in an algorithm created by State Fund was unlawful because it constituted "supplementary rate information" under state law, which was required by another state law to be publicly filed and approved by the Commissioner before being used. (RJN, Ex. 4 at 20, 23; *see also* Compl. ¶¶ 49, 56.) State Fund, on the other hand, argued that its algorithm constituted a trade secret that was protected from public disclosure. (Compl. ¶ 54.) Issues like these—what qualifies as rate information, the public's right to know how insurance rates are calculated, and an insurer's purported claim of trade secret over rate information—are complex matters of state law that implicate important policy considerations with far-reaching consequences. State Fund itself acknowledges that this action raises "a significant public policy issue" and has "broad policy implications" that State Fund believes will transcend the result in the case at bar, potentially "affect[ing] thousands of businesses and hundreds of thousands of workers." (Compl. ¶ 79.) These difficult and substantial policy issues of state law therefore require the Court to abstain under the first prong of the *Burford* doctrine.

Abstention is also warranted under the second prong as federal review of the administrative orders here would disrupt California's carefully crafted and established process for regulating insurance rates and reviewing administrative determinations of rates. In *Alabama*, the Supreme Court applied *Burford* abstention to a dispute over a railroad's request to discontinue train service, recognizing that the state had not only established a state commission to decide such issues, but had provided specific procedures for appeal of final commission orders. 341 U.S. at 348. That appeal process—which granted the state court limited powers and mandated a deferential standard of review—was "an integral part of the regulatory process under the Alabama Code," because it ensured the court's review would be "supervisory in character." *Id*. The Court thus held that because "adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights" and "[w]hatever rights appellee may have are to be pursued through the state court." *Id*. at 349–50.

Like in *Alabama*, California vested in the Commissioner and CDI exclusive jurisdiction to make insurance rate determinations in the first instance, Cal. Ins. Code §§ 11735, 11737; Compl. ¶¶ 4, 6, thereby creating a state regulator with experience and expertise in these matters to consistently

work with insurers like State Fund over a "long history…to provide fairly priced workers' compensation insurance to California's businesses" (Compl. ¶ 68). California further established an exclusive process for judicial review of such final administrative decisions under California Civil Procedure Code section 1094.5, *Doe*, 891 F.3d at 1155; *see also* Cal. Code Regs. tit. 10, § 2509.76, which sets forth specific restrictions on the proceeding, *e.g.*, Cal. Civ. Proc. Code § 1094.5(a), (e), requires the court to apply specific standards of review, *e.g.*, *id.* § 1094.5(c), and imposes specific limitations on the court's review and authority to grant relief, *e.g.*, *id*. § 1094.5(b), (f)–(h). Just as in *Alabama*, these special proceedings form "an integral part of the regulatory process" under California law, 341 U.S. at 349, reflecting the state's efforts to establish a consistent and coherent policy on the administrative determination of insurance rates and judicial review of those determinations.

Federal review of administrative decisions outside of this state process would disrupt these efforts and interfere with the purely state-law matter of regulating insurance rates. If all an insurer needed to do to avoid this "exclusive and established process," *Doe*, 891 F.3d at 1155, is to recast its state action as one for violations of the Contract and Due Process Clauses, the requirements of section 1094.5 become meaningless, making California's exclusive process entirely optional. In fact, the other administrative determination being challenged, the *Sessions* Order, is an interlocutory order of the ALJ on an issue yet to be considered and decided by the Commissioner or appealed to state court under section 1094.5. Federal review of that order would thus interrupt the administrative process before there even exists a final administrative decision to be reviewed by a state court. "Federal courts will not seize litigants from state courts merely because one…goes to federal court to begin his federal-law defense before the state court begins the case under state law." *Wycoff*, 344 U.S. at 248.

### B.   *Colorado River* Abstention Should Be Applied Because this Action Duplicates the Pending State-Court Action

In light of the pending, parallel state-court action, abstention is separately warranted under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), which allows federal courts to decline jurisdiction based "on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id*. at 817 (quotations omitted). Nearly all the relevant factors strongly favor abstention. *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017).

The state action was filed first, over a year before, and has progressed much further than this case. *Id*. at 1168. The state court has already ruled on two demurrers, the pleadings are set (RJN, Ex. 5), and discovery is underway, with a motion for summary judgment set for hearing in early 2021 (*id*. Ex. 6 at 10). Other than the Complaint and this Motion, the only filings in this case are stipulations to extend time.

Abstention would also avoid piecemeal litigation and forum shopping. *Montanore*, 867 F.3d at 1167, 1169. As discussed above (*supra* pp. 4–6), this action is duplicative of the state case, involving the same parties, the same factual allegations, and the same requested relief. State Fund appears to have decided to cut, paste, and file its state-court complaint in a different forum following two unfavorable demurrer rulings by the superior court that rejected State Fund's breach-of-contract allegations (RJN, Ex. 7 at 6 & n.2), found the action was barred by the statute of limitations though granted leave to amend (*id*. at 4), and thereafter allowed the action to proceed based on amended allegations the court found were "at best weak" but "barely me[t]" the applicable standards (*id*. Ex. 5 at 6). And the superior court recently denied State Fund's requested discovery, finding State Fund's "conduct in this litigation is borderline discovery abuse." (*Id*. Ex. 6 at 4.) State Fund's pursuit of "a new forum after facing setbacks in the original proceeding" thus weighs in favor of abstention. *Montanore*, 867 F.3d at 1169 (quotations omitted).

Lastly, the state-court action can adequately protect State Fund's federal rights and resolve all issues in this action. *Id*. at 1169–70. The state action asks the court to exercise its authority under California Civil Procedure Code section 1094.5 to set aside the entirety of the *A-Brite* Decision, which if granted would resolve all claims for relief in this action. (RJN, Ex. 3 at 33.) Every one of the nine separate claims for relief alleged here stands or falls based on State Fund's challenge to the *A-Brite* Decision. If the Decision is set aside, all the claims would become moot. If the Decision is upheld, State Fund would not be entitled to any of the claims for relief. In other words, State Fund's state-court action is an adequate vehicle for the complete and prompt resolution of the issues between the parties, and this Court should allow that to happen.

## III.   THE COMPLAINT'S CHALLENGES TO THE *A-BRITE* DECISION MUST BE DISMISSED BECAUSE STATE FUND FAILED TO EXHAUST ITS JUDICIAL REMEDIES

Separate from the Eleventh Amendment and abstention grounds for dismissal, claims 4

16

through 9, which raise substantive and procedural challenges to the *A-Brite* Decision, must be dismissed for failure to exhaust judicial remedies. Once an administrative decision such as *A-Brite* has been issued, "respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings." *Murray v. Alaska Airlines, Inc.*, 50 Cal.4th 860, 867 (2010). "Failure to do so will result in any quasijudicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims." *Id.* To exhaust judicial remedies, California law requires a party to bring a petition for writ of administrative mandamus under California Civil Procedure Code section 1094.5, which is "the exclusive and established process for judicial review of any agency decision." *Doe*, 891 F.3d at 1155 (quotations omitted).

The gravamen of the Complaint is a collateral attack on the *A-Brite* Decision. (*E.g.*, Compl. ¶¶ 27, 29.) Specifically, claims 4 through 7 allege that the *A-Brite* Decision violates the Contract and Due Process Clauses. (*Id.* ¶¶ 105–20.) Claim 8 seeks equitable indemnity for purported damages State Fund would incur as a result of the *A-Brite* Decision. (*Id.* ¶¶ 121–24.) And Claim 9 asks the Court to enjoin Defendants from applying the *A-Brite* Decision against State Fund. (*Id.* ¶¶ 125–28.)

But, by State Fund's own admission, it "did not file a writ petition challenging the *A-Brite* Decision…on or before March 15, 2019" (*id.* ¶ 72), which was the deadline to file such a petition, Cal. Code Regs. tit. 10, § 2509.76(a) (deadline is 90 days after expiration of time for reconsideration); (Compl. ¶ 64 (time for reconsideration expired on December 16, 2018)). While State Fund belatedly filed a section 1094.5 writ petition in Sacramento Superior Court on June 10, 2019 (RJN, Ex. 2), that action is still pending (*id.* Exs. 1 & 6), and State Fund has not "continue[d] that process to completion, including exhausting any available judicial avenues for reversal of adverse findings," *Murray*, 50 Cal.4th at 867. State Fund's failure to exhaust judicial remedies therefore requires the Court to "give preclusive effect" to the *A-Brite* Decision, thus barring State Fund's challenges to that Decision here. *Doe*, 891 F.3d at 1155.

## IV.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

If the Court does not dismiss the entirety of the Complaint based on the Eleventh Amendment, abstention doctrines, or exhaustion grounds, it should dismiss the following claims in the Complaint

for failure to state a claim upon which relief can be granted.

**A.      Claims 1, 2, 3, and 9 Fail as a Matter of Law Based on the Terms of the Settlement Agreement**

Claims 1, 2, 3, and 9 are based on allegations that Defendants breached the Settlement Agreement when the ALJ issued the *Sessions* Order, which applied the *A-Brite* Decision to State Fund based on judicial-exhaustion and collateral-estoppel doctrines. (E.g., Compl. ¶¶ 85–86 & Ex. C.) The Settlement Agreement itself, however, establishes that no such breach occurred. It provided that in exchange for State Fund "agree[ing] to be bound by the terms of the A-Brite Order" and "not…fil[ing] a Writ Petition challenging, in whole or in part, the A-BRITE Order," the Commissioner would "remove the precedential designation from the A-BRITE Order, rendering the decision non-precedential." (*Id.* Ex. E at 2 ¶ 2.) As the Agreement provided, removing the precedential designation meant that "the A-BRITE Order may not be 'relied upon as precedent' within the meaning of Government Code section 11425.60, subdivision (a)." (*Id.*) The Commissioner fully satisfied this obligation by, as the Complaint alleges, "'rescind[ing] the designation of the Commissioner's Decision as precedential.'" (*Id.* ¶¶ 69, 101.) The Agreement imposed no other obligations on the Commissioner, and the Complaint alleges none.

Consistent with the Settlement Agreement, the *Sessions* Order did not rely upon *A-Brite* as precedential decision, repeatedly referring to it as a "Non-Precedential Decision." (*Id.* Ex. C at 1, 3.) As the *Sessions* Order explained, "[w]hether a decision has a *preclusive effect* under the judicial exhaustion doctrine (or collateral estoppel doctrine) is unrelated to the decision's *precedential status* under the Government Code." (*Id.* Ex. C at 7.) While State Fund alleges it "understood" the Settlement Agreement to bar the use of the *A-Brite* Decision as "precedent, collateral estoppel, or for any other purpose" (*id.* ¶ 70), the Agreement—which provides that "[t]his Agreement constitutes the entire agreement of the Parties" (*id.* Ex. E at 2 ¶ 7)—does not address collateral estoppel, nor does it preclude wholesale the use of *A-Brite* for any purpose. Indeed, when the court in the state action "look[ed] to the Settlement Agreement," it found "no evidence of a 'breach.'" (RJN, Ex. 7 at 6 & n.2.) There was no breach of the Settlement Agreement, and these claims alleging a breach should be dismissed.

### B.   Claims 4 and 5 Fail as a Matter of Law Because the Administrative Orders at Issue Do Not Give Rise to a Contract Clause Violation

The Complaint fails to allege facts to support a cognizable claim under the U.S. or California Contract Clauses. Those clauses provide that no state shall "pass" any "Law impairing the Obligation of Contracts." U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9. Thus, "not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state." *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18, 30 (1888). "The prohibition is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." *Id.*; *Barrows v. Jackson*, 346 U.S. 249, 260 (1953) (recognizing that the Contract Clause, "as its terms indicate, is direct against legislative action only").

The Complaint alleges no law or legislative action passed by the state or other legislative body that impaired any State Fund contract. It alleges only that "Defendants' actions rewrite Plaintiff's currently-existing and already-fully completed contracts." (Compl. ¶ 108.) It appears that these references to "Defendants' actions" mean Defendants' issuance of the *A-Brite* Decision and the *Sessions* Order (*id.* ¶¶ 2, 15, 28)—neither of which constitutes legislative action. They are instead adjudicatory decisions of an administrative agency that apply the law to the specific facts of those cases. Claims 4 and 5 should be dismissed.

### C.   Claims 6 and 7 Fail as a Matter of Law Because the Complaint Admits That State Fund Had Adequate Notice Under the Due Process Clause

The Complaint alleges that, in the *A-Brite* proceeding, "Defendants did not provide adequate notice that State Fund's rate filings were being reviewed…until after the evidentiary record had already been closed," in violation of State Fund's Due Process rights. (Compl. ¶ 117.)

But elsewhere, the Complaint admits that State Fund was directly notified that at issue in the proceeding was whether it had properly calculated the rates charged to the A-Brite company in 2015 and 2016 "in accordance with State Fund's *filings with the California Insurance Commissioner*…and applicable law." (*Id.* ¶ 49 (quoting ALJ order) (emphasis added)). In fact, the ALJ ordered State Fund to produce documentation showing how those rates were calculated (*id.* ¶ 51), to which State Fund objected alleging that its "algorithm" used to calculate rates was a protected trade secret (*id.* ¶¶ 52,

54). The ALJ did not accept State Fund's trade-secret claim, but nevertheless sustained the objection, finding the algorithm was unnecessary for A-Brite to carry its burden of proof. (*Id.*) That ruling, of course, did not preclude State Fund from producing the algorithm in its defense or other documentation showing that it calculated rates in accordance with its filings with the Commissioner.

Later, the ALJ ordered State Fund to brief whether the algorithm State Fund was refusing to produce constituted "supplementary rate information," which "was *required to be filed* with the Insurance Commissioner under section 11735, subdivision (a)." (*Id.* ¶ 56 (quoting ALJ's order) (emphasis added)). After State Fund briefed the issue, the ALJ "order[ed] State Fund to produced its algorithm for the 2015 and 2016 policy years." (*Id.* ¶ 57.) Instead of producing the algorithm as ordered by the ALJ, State Fund filed objections (*id.* ¶ 59), even though it had already been given an opportunity to brief the issue (*id.* ¶¶ 56–57). The ALJ thereafter ordered the record closed. (*Id.* ¶ 58.)

State Fund's own allegations thus refute its claims that it had no idea that "its rate filing was at issue" and that it was not allowed a "reasonable opportunity to present evidence" on its algorithm. (*Id.* ¶¶ 58, 62.) The ALJ went out of his way to obtain such information from State Fund. State Fund refused. State Fund was not denied notice. It simply failed to comply with the ALJ's orders or to present other evidence on this issue. That scarcely makes out a claim that Defendants violated State Fund's Due Process rights. Claims 6 and 7 should be dismissed.

### D.   Claims 4 and 6 Against the California Department of Insurance Fail as a Matter of Law Because CDI Is Not a "Person" Under § 1983

The Complaint relies on § 1983 to allege that Defendant CDI violated the Contract and Due Process Clauses of the U.S. Constitution. (Compl. ¶¶ 111, 118.) But § 1983 does not apply to states or state agencies. *Will*, 491 U.S. at 70–71. Claims 4 and 6 should be dismissed as to CDI.

### CONCLUSION

"For over a century now, th[e] [Supreme] Court has consistently made clear that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). State Fund's filing of this action stands in contradistinction to that unbroken precedent. State Fund's claims, which it has been litigating in state court for over a year now, have no business being raised in this forum. They should be dismissed with prejudice.

20

1    DATED:  October 6, 2020                    Respectfully submitted,

2                                               STRUMWASSER & WOOCHER LLP

3

4                                               By:  _/s/ Bryce Gee_____

5                                               *Attorneys for Defendants Ricardo Lara and the*
                                                *California Department of Insurance*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28